**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GARY M. BLACKBURN,          ) | CASE NO. 5:13-CV-00711 |
|                    ) | |
|        Plaintiff,      ) | |
|                    ) | MAGISTRATE JUDGE |
|        v.             ) | VECCHIARELLI |
|                    ) | |
| CAROLYN W. COLVIN,       ) | |
|    Acting Commissioner of Social   ) | |
|    Security,              ) | **MEMORANDUM OPINION AND** |
|                    ) | **ORDER** |
|        Defendant. | |

Plaintiff, Gary M. Blackburn ("Plaintiff"), challenges the final decision of

Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security

("Commissioner"), denying his applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II

and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").   This

case is before the undersigned United States Magistrate Judge pursuant to the consent

of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set

forth below, the Commissioner's final decision is REVERSED and REMANDED for

proceedings consistent with this opinion.

## I.   PROCEDURAL HISTORY

On April 14, 2011, Plaintiff filed applications for DIB, POD, and SSI and alleged a

disability onset date of April 5, 2011.  (Transcript ("Tr.") 11.)  The application was

denied initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (*Id.*)  On November 6, 2012, an ALJ held Plaintiff's

hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On November 21, 2012, the ALJ found Plaintiff not disabled.  (Tr. 8.)  On January 24, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)  On April 1, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 18, 19, 20.)

Plaintiff asserts the following assignments of error: (1) the ALJ improperly considered the findings of the prior ALJ; (2) the ALJ failed to properly consider the credibility of Plaintiff's statements; (3) substantial evidence does not support the ALJ's conclusion that Plaintiff can perform other work; and (4) the ALJ violated the treating physician rule.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in September 1975 and was 35-years-old on the alleged disability onset date.  (Tr. 20.)  He had at least a high school education and was able to communicate in English.  (*Id.*)  He had past relevant work as a short order cook and a fast food worker.  (*Id.*)

### B.    Medical Evidence

#### 1.    Medical Reports

Plaintiff's primary care physician, Elizabeth Hayford, M.D., examined Plaintiff on April 1, 2011.  (Tr. 492.)  Plaintiff presented with anxiety and complained of feeling

2

hopeless, depressed, and having sleep disturbance.  (*Id.*)  He had been treating with

nurse practitioner Jamie Hain, who had prescribed Geodon, Lamictal, and Ativan, which

provided minimal relief for Plaintiff's anxiety.  (*Id.*)  Plaintiff also presented with

hyperlipidemia, which was alleviated by medication and exercise.  (*Id.*)  A physical

examination of Plaintiff by Dr. Hayford was unremarkable for back or leg pain, and

Plaintiff reported that he exercises by walking his dog.  (Tr. 492-493.)

On that same date, Dr. Hayford completed a basic medical report, listing

Plaintiff's impairments as depression, anxiety, PTSD, bipolar, excessive anger, GERD,

high cholesterol, Vitamin D deficiency, lumbar disc disease, and hypothyroidism.  (Tr.

475.)  Dr. Hayford opined that Plaintiff could stand/walk for four hours in an eight-hour

workday for two hours at a time; sit for four hours in an eight-hour workday for two

hours at a time; and lift/carry up to ten pounds frequently and twenty pounds

occasionally.  (Tr. 476.)  She noted moderate limitation in bending and speaking due to

mental illness, and indicated that Plaintiff walked stiffly in the office and often shifted in

his seat.  (*Id.*)  She also noted that Plaintiff had an abnormal MRI.  (*Id.*)  Dr. Hayford

opined that Plaintiff is unemployable.  (*Id.*)

On April 14, 2011, clinical counselor Ann Brandt, M.S.Ed., conducted an intake

at Columbiana County Mental Health Center, where Plaintiff reported a history of

bipolar disorder for the last five years and PTSD since 2000.  (Tr. 500.)  Plaintiff

reported having had suicidal ideation two days prior to the intake and that his last self-

injurious behavior was in 2007.  (*Id.*)  He reported two hospitalizations: one in 2009 for

suicidal ideation and another in 2010 for attempting suicide.  (*Id.*)  Plaintiff presented

3

with limited coping skills to counteract his alleged moderate suicidal ideation and psychotic symptoms.  (Tr. 501.)  The plan was for Plaintiff to attend psychiatric appointments with nurse practitioner Jamie Hain and engage in individual and family therapy to address symptom management.  (*Id.*)

On April 20, 2011, Ms. Hain completed an initial psychiatric evaluation at Columbiana County Mental Health Center.  (Tr. 517.)  Plaintiff reported feeling anxious, depressed, and having difficulty sleeping.  (*Id.*)  On mental status examination, Plaintiff was mildly depressed, his thought process was logical and intact, his insight and judgment were poor, and no psychotic symptoms were reported.  (Tr. 517-518.)  At an appointment with Ms. Hain on May 4, 2011, Plaintiff reported hearing voices for almost a week.  (Tr. 519.)  On mental status examination, Plaintiff's mood was mildly depressed and anxious, his insight and judgment were poor, his thought content/processes were logical and intact, and he did not report any psychotic symptoms.  (*Id.*)  A month later, Plaintiff reported that he rarely heard voices.  (Tr. 521.)  His mental status examination showed that he had a mildly depressed mood and was anxious with poor insight and judgment, but with logical and intact thoughts, no psychiatric symptoms reported, and no suicidality.  (*Id.*)

On July 7, 2011, Adel Zakari, M.D., a pain management specialist, examined Plaintiff at Dr. Hayford's request.  (Tr. 536.)   Plaintiff's chief complaint was lower back pain with radiation down the lower extremities.  (Tr. 536, 544.)  Plaintiff reported that his pain grew worse with walking, standing, and any physical activity in general, but that it improved with rest and Vicodin.  (*Id.*)  Dr. Zakari noted that a prior MRI of the lumbar spine performed in October 2008 revealed a left paracentral disc herniation at L5-S1

4

with slight mass effect upon the S1 nerve root and a tiny left paracentral protrusion at
L4-L5.  (Tr. 536.)  Dr. Zakari also noted that Plaintiff had an MRI of the left knee in
October 2008 that showed a tear involving the posterior horn and the body of the
median meniscus with a large cystic mass anterior to the MCL reflecting a dissecting
external meniscal cyst or ganglion cyst, with documentation of an arthroscopy in 2009.
(Tr. 537.)  Plaintiff had no weakness in his lower extremities and walked without
assistance.  (Tr. 536, 544.)  Dr. Zakari diagnosed Plaintiff with lumbar disc space
myelopathy and lumbar degenerative disc disease.  (Tr. 546.)  He also ordered an MRI
of the lumbar spine that was performed on July 21, 2011, and revealed a small left
paracentral disc protrusion at L3-4, which appeared slightly worse and mild disc
material extending to the left neutral foramen, as well as a small left paracentral disc
protrusion at L5-S1 showing no significant change.  (Tr. 533-534, 538.)

On July 30, 2011, Plaintiff sought emergency room treatment, claiming that for
the last two weeks, he had been hearing voices telling him to kill himself or harm others.
(Tr. 555, 557, 562.)  Plaintiff reported having a history of depression, anxiety, agitation,
mood swings, and difficulty sleeping at night.  (Tr. 555.)  His diagnoses upon admission
were acute exacerbation of bipolar disorder/schizophrenia disorder and auditory and
visual hallucinations with suicidal ideation.  (Tr. 561.)  He responded well to treatment
with Zyprexa and Lexapro.  (Tr. 555.)  Plaintiff was discharged on August 7, 2011, with
final diagnoses of bipolar disorder mixed with psychotic features and a past history of
marijuana and crack cocaine abuse.  (Tr. 556.)  A discharge report indicated that
Plaintiff responded to treatment and felt "100% improved."  (Tr. 555.)

On August 16, 2011, Plaintiff entered post-hospitalization follow-up with Trillium

5

Family Solutions, at which time he reported still hearing voices.  (Tr. 572.)  Plaintiff related having symptoms of racing thoughts and increased activity during manic episodes alternating with episodes of major depression and auditory hallucinations. (*Id.*)  He indicated that he was not working because he gets "nervous around lots of people."  (Tr. 574.)  Plaintiff was diagnosed with bipolar disorder, most recent episode depressed, severe with psychotic features; and alcohol, cocaine, and cannabis dependence, all in sustained full remission.  (Tr. 580.)  He was assessed a Global Assessment of Functioning ("GAF") score of 47.[1]  (Tr. 580.)  Plaintiff returned for continued counseling on August 29, 2011, and had a GAF score of 55.[2]  (Tr. 570.)  On October 21, 2011, Plaintiff reported that he was doing well and his mood, sleep, and appetite were "ok."  (Tr. 604.)  He had a diagnosis of major depressive disorder with psychotic features.  (Tr. 605.)

Between September 2011 and August 2012, Plaintiff saw Michael Riveraweiss, M.D., for back pain and was treated with steroid injections.  (Tr. 583-593, 626-655, 671-683.)  Despite the steroid injections, Plaintiff continued to complain of low back pain radiating down his left leg.  (Tr. 586, 591.)  An electromyography (EMG) and nerve conduct study revealed evidence of left L5 radiculopathy in December 2011.  (Tr. 646, 651.)  At a December 13, 2011, visit with Dr. Riveraweiss, Plaintiff reported that

---

[1]     The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association.  A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning.

[2]     A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

6

medication significantly reduced his pain, and in January 2012, he reported that a nerve root block gave him significant relief for three weeks.  (Tr. 631, 637, 639.)

At a February 2012 visit with Dr. Riveraweiss, Plaintiff reported that the pain in his leg had improved but the pain in his lower back had returned.  (Tr. 676.)  An August 2012 evaluation revealed tenderness in the lumbosacral spine and a positive straight leg-raise test on the left, but Plaintiff remained neurologically intact with positive reflexes to his lower and upper extremities and exhibited normal range of motion, muscle strength, and stability on examination.  (Tr. 674.)  While Dr. Riveraweiss encouraged Plaintiff to continue home stretching and exercise, he did not impose limitations on Plaintiff's activities.  (Tr. 672-675.)

Trillium records from March 23, 2012, June 9, 2012, August 3, 2012, and October 4, 2012, reflect on-going treatment for major depressive disorder with psychotic features.  (Tr. 685-692.)  Plaintiff remained coherent without delusions on February 2, 2012, although he reported visual and auditory hallucinations.  (Tr. 620.)  Despite hearing some voices on October 4, 2012, Plaintiff showed no psychosis and denied suicidal or homicidal ideation.  (Tr. 685.)

## 2.    Agency Reports

On March 10, 2009, Plaintiff attended a one-time consultative examination with James M. Lyall, Ph.D.  (Tr. 370-373.)  Plaintiff stated that he did not have many friends and tended to avoid people and not trust them.  (Tr. 372.)  He reported problems with general hygiene and stated that he does not do much around the house because of his back condition.  (*Id.*)  Dr. Lyall reported that Plaintiff had difficulty in auditory attention skills and in simple processing speed and that his verbal comprehension skills are

7

slightly better, falling more within the upper borderline range.  (*Id.*) Plaintiff had a full scale IQ score of 75, a processing speed index of 76, and a working memory index score of 74.  (Tr. 374.)  Dr. Lyall diagnosed bipolar disorder, most recent episode depressed; post-traumatic stress disorder, moderate; cocaine abuse in remission; borderline intellectual functioning; and personality disorder mixed with antisocial and paranoid features.  (Tr. 372-373.)  Dr. Lyall concluded that Plaintiff would have a moderately impaired ability to relate to others; a moderately impaired ability to understand and follow instructions; a moderately impaired ability to maintain attention and perform simple tasks; and a moderately impaired ability to withstand the stress and pressure associated with day-to-day work activity.  (Tr. 373.)

On June 29, 2011, state agency psychiatric consultant Cynthia Waggoner, Psy.D., concluded that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 102.)

On July 14, 2011, state agency medical consultant William Bolz, M.D., concluded that Plaintiff retained the ability to perform light duty work.  (Tr. 103-104.)  Dr. Bolz opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; and he could sit (with normal breaks) for a total of about six hours in an eight-hour workday.  (Tr. 112.)  Dr. Bolz also adopted an April 4, 2011, RFC determination of a previous ALJ:

> The undersigned finds that the allegations concerning the nature and persistence of the claimant's symptoms are not fully credible. Repeated examinations reveal that the claimant has good use of his

> arms and legs and moves about in a satisfactory manner.  The claimant is neurologically intact.  The objective evidence fails to document an impairment or combination of impairments which would be expected to result in disabling pain.  Given all of the factors analyzed in this case, including but not limited to the conservative treatments offered to the claimant, the relative lack of strongly positive clinical signs documented in treatment notes and the claimant's activities of daily living, the preponderance of the evidence supports a finding that he can perform work at the light exertional level with the above noted exceptions.

(Tr. 112-113.)

On November 9, 2011, state agency medical consultant Louis Goorey, M.D., concluded that Plaintiff retained the ability to perform light work, with an inability to climb ladders, ropes, or scaffolds; the ability to frequently stoop, kneel, or crawl; and the need to avoid exposure to unprotected heights.  (Tr. 125-127.)  Dr. Goorey found that Plaintiff was moderately limited in his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting.  (Tr. 127-129.)  Dr. Goorey opined that Plaintiff was not disabled.  (Tr. 130.)

On November 9, 2011, state agency psychiatric consultant Kristen Haskins, Psy.D., concluded that Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 124.)  Dr. Haskins found Plaintiff's statements regarding his symptoms to be partially credible, because the severity he alleged was not supported by the objective medical evidence.  (Tr. 125.)

9

C.    **Hearing Testimony**

1.    **Plaintiff's Hearing Testimony**

Plaintiff is 6'2" and weighs 283 pounds.  (Tr. 40.)  He lives in a house with his wife and stepdaughter.  (*Id.*)  He has a driver's license and drives himself to his medical appointments.  (*Id.*)

Plaintiff's last job was at Giant Eagle where he worked in the meat department for six months.  (Tr. 41.)  He left the job because of problems with his back.  (Tr. 42.)  "I'd work one night and have to have like two or three days off to get my back straightened out."  (*Id.*)  Plaintiff had also worked at Arby's as a sandwich maker, at Buffalo Wild Wings as a manager, and at Jewel City Seafood as a short order cook.  (Tr. 43-45.)  He had some additional jobs that he worked for short periods of time.  (Tr. 45-46.)

When the ALJ asked Plaintiff what keeps him from working, Plaintiff testified that he gets nervous around people and has to have his back to the wall in a large crowd.  (Tr. 50.)  He also noted that he experiences back pain after walking about a mile.  (*Id.*)  He takes Vicodin and Neurontin regularly, which sometimes helps with his pain.  (Tr. 51.)  He testified that the side effects from his medications include hearing voices and seeing people that are not there.  (Tr. 52.)  He stated that this is a problem he experiences all of the time and that it is distracting.  (Tr. 54.)  Plaintiff testified that he quit most of his past jobs because he gets nervous and does not like to be around large groups of people.  (Tr. 52.)  He stated that he generally got along well with his coworkers but that he has always had a problem trusting people.  (*Id.*)

10

Plaintiff described a typical day for him as "basically off and on sitting and standing and then lying down."  (Tr. 55.)  He is able to vacuum the lower level of his house and let the dog out.  (*Id.*)  He does not do laundry, and does not go shopping at any stores due to his anxiety.  (Tr. 56.)  He sometimes uses his computer or watches TV, but finds that TV shows do not hold his interest.  (Tr. 57.)  He stated that he has difficulty bathing on a regular basis because he has problems lifting himself in and out of the tub.  (Tr. 59-60.)  Plaintiff's wife has to tell him to shower, shave, and brush his teeth.  (Tr. 60.)  He testified that this has been going on for the past year because he "just don't care."  (Tr. 60.)  He gained 20-25 pounds since his last hearing, which he attributed to his "nerves."  (*Id.*)  Plaintiff testified that he could lift one gallon of milk but not two.  (Tr. 58.)

When Plaintiff's counsel asked him whether his condition changed or worsened since his last hearing, Plaintiff responded that he started hearing voices and seeing people within the last year.[3]  (Tr. 58.)  He testified that his back pain has gotten worse and that he lays down about three or four times a day for 15 minutes each time.  (Tr. 61.)  "And then if I try to walk or do something it kills me the next two or three days after that."  (*Id.*)  The pain in his leg gets better for about a week after he receives his injections.  (Tr. 62.)  He testified that the pain in his leg has gotten worse because now his leg often goes numb.  (*Id.*)  Plaintiff only sleeps for about three hours per night due to his physical pain and his mental state.  (Tr. 61.)  His lack of sleep makes him drowsy

---

[3]    On March 24, 2011, Plaintiff appeared and testified at a hearing before an ALJ in Akron, Ohio.  (Tr. 78.)  On April 4, 2011, the ALJ found Plaintiff not disabled.  (Tr. 75.)

during the day.  (*Id.*)

### 2. Vocational Expert's Hearing Testimony

A vocational expert, Bruce Holderead, also testified at Plaintiff's hearing.  (Tr. 63.)  The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience.  (Tr. 68.)  The hypothetical individual can occasionally lift and/or carry including upward pulling 20 pounds.  (*Id.*)  He can frequently lift and/or carry including upward pulling 10 pounds. (*Id.*)  He can stand and/or walk with normal breaks for about six hours in and eight-hour workday and can sit with normal breaks for about six hours in an eight-hour workday.  (*Id.*)  His ability to push and pull is unlimited other than as what was indicated for lift or carry.  (*Id.*)  The individual has no limitations in climbing ramps and stairs or balancing; he can occasionally stoop, kneel, crouch, or crawl; and he can never climb ladders, ropes, and scaffolds.  (*Id.*)  He should avoid moderate exposure to hazards such as machinery and all exposure to unprotected heights.  (Tr. 68-69.)  The individual has no manipulative, visual, or communicative limitations but would be limited to simple decision-making, simple repetitive tasks, superficial social interactions, and static work duties.  (Tr. 69.)

The VE testified that the hypothetical individual the ALJ described would be able to perform Plaintiff's past job as a fast food worker.  (*Id.*)  The individual would not be able to work as a short order cook.  (*Id.*)  The VE also opined that the individual could perform the following jobs: cashier II (light exertional level occupation, unskilled) (approximately 11,000 jobs regionally and 1.1 million nationally); cleaner, housekeeping (light exertional level occupation, unskilled) (approximately 3,000 jobs regionally and

12

377,000 nationally); ticket seller (light exertional level occupation, unskilled) (approximately 2,000 jobs regionally and 75,000 nationally).  (Tr.  70.)  The ALJ indicated that this was not an exhaustive list of jobs.  (*Id.*)

The ALJ presented a second hypothetical to the VE.  (*Id.*)  She asked the VE to assume the same individual from the first hypothetical, but also assume that the individual could stand for only four hours in an eight-hour workday.  (Tr. 70-71.)  The VE testified that the individual would not be able to perform the full range of light jobs but that there would be some light jobs that could be done in some cases.  (Tr. 71.)  The VE offered the example of a cashier II, where the cashiers have the option of sitting and standing such as in a parking lot booth or toll booth or in a cafeteria or restaurant.  (*Id.*) The available jobs would be reduced substantially but would still leave approximately 2,000 positions regionally and 200,000 nationally.  (*Id.*)  The cleaner, housekeeping job would be eliminated, but the ticket seller jobs would still be available but in reduced numbers.  (*Id.*)  The VE testified that the individual could perform the following other jobs: office helper (light exertional level occupation, unskilled) (approximately 1,200 jobs regionally and 116,000 nationally), and mail clerk (not in the post office) (light exertional level occupation, unskilled) (approximately 750 jobs regionally and 71,000 nationally). (Tr. 71-72.)  The VE further stated that he believes there are other similar office type jobs that could be done by someone who can stand and walk up to four hours in an eight-hour day.  (Tr. 72.)

The VE testified that there would be no work available for an individual who would be absent two or more days per month.  (*Id.*)  The VE further stated that an

individual who would be off task more than 15 percent of the workday would not be able to sustain employment.  (Tr. 73.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience.  20 C.F.R. §§ 404.1520(d) *and*

14

416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    Plaintiff meets the insured status requirements of the Act through December 31, 2013.

2.    Plaintiff has not engaged in substantial gainful activity since April 5, 2011, the alleged onset date.

3.    Plaintiff has the following severe impairments: obesity, degenerative disc disease of the lumbar spine with disc herniation at L5-S1 (with slight mass effect on S1 nerve root, tiny left protrusion at L3-4 with annular tear and shallow disc protrusion), L5 radiculopathy, left knee tear of post horn and body of median meniscus with large cystic mass anterior to MCL, status post arthroscopy left knee 2009, bipolar disorder, mixed with psychotic features, posttraumatic stress disorder, moderate, borderline intellectual functioning and personality disorder, mixed with antisocial features.

4.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.9679(b) except that he can occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for about 4 hours in an 8-hour workday, sit (with normal breaks) for about 6 hours in an 8-hour workday; push and/or pull (including operation of hand/foot controls) unlimited, other than as shown for lift and/or carry; no limits

15

climbing ramps/stairs, balancing, can occasionally stoop, kneel, crouch, or crawl; he should never climb ladders/ropes/scaffolds, must avoid moderate exposure to hazards (machinery, etc.), avoid all exposure to unprotected heights, no manipulative, visual, communicative limitations, can engage in simple decision making, simple repetitive tasks, superficial social interactions with the public, coworkers and supervisors and static work duties.

6.   Plaintiff is unable to perform any past relevant work.

7.   Plaintiff was born in September 1975 and was 35-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.   Plaintiff has at least a high school education and is able to communicate in English.

. . . . .

10.  Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11.  Plaintiff has not been under a disability, as defined in the Act, from April 5, 2011, through the date of this decision.

(Tr. 13-21.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court

16

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

#### 1.  The ALJ Improperly Considered the Findings of the Prior ALJ.

Plaintiff argues that the ALJ improperly considered the findings of the first ALJ who reviewed his claim for benefits (the "first ALJ").[4]  The first ALJ found that Plaintiff could not perform jobs with "strict time or production pressures."  (Tr. 82.)  The most recent ALJ did not include this limitation in her hypotheticals to the VE or in her RFC finding.  (Tr. 15-16.)  Plaintiff argues that the ALJ was bound by the "favorable

---

[4]     On April 4, 2011, an ALJ decided that Plaintiff was limited to light work and not disabled from October 2008 through April 4, 2011.  (Tr. 82, 91.) The district court vacated and remanded that decision.  *Blackburn v. Colvin*, 5:12CV2355, 2013 WL 3967282 (N.D. Ohio July 31, 2013) (Pearson, J.) (remanding, finding that the ALJ failed to offer any meaningful analysis as to why he gave little weight to the opinions of Blackburn's treating physicians).

17

subsidiary finding from the previous decision unless there was new and material evidence to the contrary."  (Plaintiff's Br. ("Pl.'s Br.") at 18.)  The Commissioner responds that the ALJ relied on new and material evidence that warranted a more restrictive RFC than previously found by the first ALJ, and that substantial evidence supports the ALJ's RFC determination.  For the following reasons, Plaintiff's argument is well taken.

Plaintiff contends that, pursuant to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and Acquiescence Ruling 98-4(6), the ALJ was required to adopt the first ALJ's determination that Plaintiff could not perform jobs with strict time or production pressures.  Absent substantial evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.  *See Drummond*, 126 F.3d at 842-43.  The standard for reviewing a subsequent ALJ's decision remains substantial evidence.  *Id*. at 843 (applying the substantial evidence standard to the ALJ's conclusion that the claimant's condition had improved).

Here, the ALJ erred by failing to include a limitation for time and production pressures in Plaintiff's RFC.  At the outset of her discussion of Plaintiff's RFC, the ALJ noted: "Pursuant to *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997) and AR 98-4(6), I am not bound by the residual functional capacity found in the previous Administrative Law Judge's decision because I find that there is new and material evidence that warrants a *more restrictive* functional capacity than previously found."  (Tr. 16) (emphasis added).  A comparison between the decisions of the ALJ here and the first ALJ, however, reveals that while the ALJ in this case included some

18

additional limitations in Plaintiff's RFC that the first ALJ had not included, the first ALJ

found that Plaintiff could not work under strict time or production pressures, while the

ALJ here did not include such a limitation.  (Tr. 15-16, 82.)  Thus, it is not accurate to

say that the ALJ's RFC determination was "more restrictive" than the first ALJ's RFC.

Moreover, neither the ALJ nor the Commissioner cites to any new and material

evidence justifying the exclusion of a limitation related to strict time or production

pressures.  Accordingly, the ALJ was bound by the first ALJ's RFC.[5]

In his Reply Brief, Plaintiff argues that the opinion of psychological consultant Dr.

Lyall – later adopted by state agency consultant Dr. Waggoner – included a moderate

impairment in Plaintiff's ability to perform simple tasks and to withstand the stress and

pressure associated with day-to-day work activity due to difficulties with processing

speed and auditory attention.[6]  (Tr. 104, 113, 373.)  Additionally, Plaintiff notes that on

November 9, 2011, non-examining psychological consultant Dr. Haskins opined that

Plaintiff was moderately limited in his ability to perform at a consistent pace without an

unreasonable number and length of rest periods.  (Tr. 128.)  Thus, evidence in the

record supports the first ALJ's finding that Plaintiff could not perform jobs with strict time

---

[5]      Neither party has clearly or fully argued that the remand and vacation of
the first ALJ's decision has any impact on the binding effect of the first
ALJ's RFC determination.  Moreover, the ALJ specifically stated that her
RFC was more restrictive than the first ALJ's.  The ALJ's opinion does not
state that she considered the evidence in the record relating to strict time
and production pressures but found new and material evidence to reject
the ALJ's inclusion of this limitation in Plaintiff's RFC.  The lack of clarity
on this issue requires remand.

[6]      Dr. Waggoner noted that she adopted the RFC of the first ALJ.  (Tr. 104,
113.)

19

or production pressures.  (Tr. 82.)

Moreover, to the extent the Commissioner argues that the ALJ adequately accounted for a limitation regarding strict time or production pressures by limiting Plaintiff to simple decision-making, static work duties, and simple, repetitive tasks, this argument is without merit.  (Tr. 16.)  Restricting a claimant to simple tasks and static work duties does not necessarily address the claimant's inability to perform jobs with strict time or production pressures.  Plaintiff cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support his contention that the ALJ's hypothetical – and RFC – did not sufficiently address the speed- and pace-based restrictions that the first ALJ had included in his RFC determination.  In *Ealy*, the record showed that the claimant had a limited ability to maintain attention over time, even when performing simple, repetitive tasks.  *Ealy*, 594 F.3d at 516.  Specifically, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical."  *Id.*  The ALJ, however, limited the claimant only to simple, repetitive tasks without any additional time-based limitations.  Accordingly, the Sixth Circuit found that the ALJ failed to adequately capture the claimant's limitations in concentration, persistence, and pace.  *Id.*

*Ealy* undoubtedly stands for the proposition that an ALJ's hypothetical to a VE must adequately describe a claimant's limitations in order to serve as substantial evidence in support of the ALJ's conclusions.  *Id.* at 517.  However, *Ealy*  "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for

20

every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011) (Boyko, J.). Rather, "*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Id.* at 4.

Here, the record supports Plaintiff's contention that the ALJ erred by failing to incorporate speed- and pace-based restrictions into her hypothetical to the VE and, ultimately, into her RFC determination. Plaintiff has pointed to evidence in the record from Drs. Lyall, Waggoner, and Haskins showing that Plaintiff has moderate difficulties related to processing speed. The ALJ's RFC finding, however, omitted speed- and pace-based restrictions completely. Thus, the ALJ's RFC was *less* restrictive than the RFC determination of the first ALJ. As a result, the ALJ erred by failing to adopt the RFC of the first ALJ, or in the alternative, cite new and material evidence to support a finding of a less restrictive RFC that did not account for strict time or production pressures. For the foregoing reasons, Plaintiff's first assignment of error presents a basis for remand.

### 2. The ALJ Failed to Properly Consider the Credibility of Plaintiff's Statements.

Plaintiff takes issue with the ALJ's assessment of Plaintiff's credibility regarding his complaints of pain. According to Plaintiff, the ALJ did not provide specific reasons for her finding on credibility and did not make clear the weight she gave to Plaintiff's statements and the reasons for that weight. The Commissioner responds that the ALJ carefully considered Plaintiff's subjective complaints when determining his RFC and

21

that the substance of her decision supports her credibility finding.  For the following

reasons, Plaintiff's argument is without merit.

Credibility determinations regarding a claimant's subjective complaints rest with

the ALJ, are entitled to considerable deference, and should not be discarded lightly.

*See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987);

*Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

However, the ALJ's credibility determinations must be reasonable and based on

evidence from the record.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th

Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir.

1983).  The ALJ also must provide an adequate explanation for her credibility

determination.  "It is not sufficient to make a conclusory statement 'that an individual's

allegations have been considered' or that 'the allegations are (or are not) credible.'"

S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).  Rather, the determination "must contain

specific reasons for the finding on credibility, supported by evidence in the case record,

and must be sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reason

for that weight."  *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a

two-step test known as the "Duncan Test" to determine the credibility of such

complaints.  *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  First,

the Commissioner must examine whether the objective medical evidence supports a

22

finding of an underlying medical condition that could cause the alleged pain.  *Id.*

Second, if there is such an underlying medical condition, the Commissioner must

examine whether the objective medical evidence confirms the alleged severity of pain,

or, alternatively, whether the objectively established medical condition is of such a

severity that it can reasonably be expected to produce the alleged severity of pain.  *Id.*

In making this determination, the ALJ must consider all of the relevant evidence,

including six different factors.[7]  *See Felisky,* 35 F.3d at 1039–40 (citing 20 C.F.R. §

404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may

satisfy the Duncan Test by considering most, if not all, of the relevant factors.  *Bowman*

*v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per

curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not

all, of the relevant factors in her assessment of Plaintiff's condition.  (Tr. 16-20.)  The

ALJ examined Plaintiff's daily activities, his treatments and his responses to those

treatments, the clinical examination findings, and the physician statements of record.

---

[7] These factors include the following:
    (1) the claimant's daily activities;
    (2) the location, duration, frequency, and intensity of the claimant's
    alleged pain;
    (3) precipitating and aggravating factors;
    (4) the type, dosage, effectiveness, and side effects of any medications
    taken to alleviate the pain;
    (5) treatments other than medication that the claimant has received to
    relieve the pain; and
    (6) any measures that the claimant takes to relieve his pain.

23

(*Id.*)  Thus, the ALJ considered the relevant evidence.

Moreover, in assessing Plaintiff's complaints of pain, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible to the extent that they were inconsistent with his RFC.  (Tr. 24.)  Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, she determined that her RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence.  For example, the ALJ noted that:

> [i]n terms of his alleged limitations associated with pain to his spine and lower extremities, diagnostic imaging and physical examinations show abnormality; however, his gait is normal, his ability to ambulate is evidenced by his testimony that he walks one mile to and from Trillium and he does not require an assistive device to ambulate.  While he has herniated discs of the lumbar spine, there is no evidence of sensory loss, muscle wasting or neurological deficits.  Thus, he has limitations secondary to his spine, as well as to his left knee; however, he is not precluded from work within the above residual functional capacity.

(Tr. 17.)  Thus, the ALJ specifically compared Plaintiff's symptoms to the results of diagnostic findings and found that Plaintiff's subjective complaints were inconsistent with the objective evidence.  This inconsistency is an appropriate basis for an adverse credibility finding.  *See Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")  Accordingly, Plaintiff's second assignment of error presents no basis for remand.

### 3. Substantial Evidence Does Not Support the ALJ's Conclusion that Plaintiff Could Perform Other Work.

24

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff could perform other work, because the ALJ's formation of Plaintiff's RFC and the hypothetical question posed to the VE did not accurately portray Plaintiff's exertional and non-exertional abilities.  Specifically, Plaintiff contends that the ALJ should have limited Plaintiff to work that did not require strict time frames and high production quotas in order to address Plaintiff's limitations in persistence and pace. Plaintiff points to state consultants Dr. Lyall, Dr. Waggoner, and Dr. Haskins,[8] arguing that the ALJ did not account for some of the limitations included in their opinions.  This argument already has been addressed in the previous discussion of Plaintiff's first assignment of error.

### 4.      The ALJ Violated the Treating Physician Rule.

In his fourth assignment of error, Plaintiff takes issue with the ALJ's treatment of the opinion of treating physician Dr. Hayford.  The ALJ gave "little weight" to Dr. Hayford's opinion that Plaintiff is unemployable.  (Tr. 19, 476.)  According to Plaintiff, Dr. Hayford's opinion was entitled to controlling weight, because it was well-supported by clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.  The Commissioner responds that the ALJ did not err, because Dr. Hayford's opinion was conclusory, in conflict with the medical evidence

---

[8]      Dr. Lyall concluded that Plaintiff would have a moderately impaired ability to perform simple tasks and to withstand the stress and pressure associated with day-to-day work activity due to difficulties with processing speed and auditory attention.  (Tr. 373.)  Dr. Waggoner adopted the prior ALJ's RFC, which included speed and pace-based limitations.  (Tr. 82, 104.)  Dr. Haskins opined that Plaintiff had a moderate limitation in his ability to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 128.)

of record, and unsupported by her own treatment notes.  For the following reasons, Plaintiff's argument is without merit.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain her reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

Here, the ALJ did not err in assigning little weight to the opinion of Dr. Hayford, as she provided "good reasons" for doing so.  The ALJ explained that she gave "little weight" to Dr. Hayford's April 1, 2011, opinion, because it conflicted with her treatment notes from an examination of Plaintiff completed on the same date as the medical report.  (Tr. 19, 475-476.)  "Specifically, she limited sitting to four hours as well as

26

standing and walking; however, physical examination was silent regarding pain to the

claimant's spine or leg (Ex. 9F, 5-6.)."  (Tr. 19, 492-493.)  As the ALJ noted, on the

same day that Dr. Hayford found Plaintiff limited to sitting, standing, and walking for

only four hours, Plaintiff's physical examination was unremarkable for back or leg pain

and Dr. Hayford noted that Plaintiff walked his dog for exercise.  (Tr. 17, 492-493.)  The

ALJ also noted that Dr. Hayford's opinion was not supported by Dr. Zakari, who saw

Plaintiff at the request of Dr. Hayford on July 7, 2011, and found that – despite the

significantly limited range of motion to his lumbar spine – Plaintiff could perform heel

and toe walking, had good range of motion of his hips and knees and a normal gait

without neurological deficit, supporting a range of light exertion.  (Tr. 19.)  Thus, the ALJ

did not err in providing little weight to Dr. Hayford's opinion, because she gave good

reasons for doing so: Dr. Hayford's 2011 opinion was in conflict with the medical

evidence of record and was unsupported by her own treatment notes.[9]

---

[9]    Plaintiff argues that Dr. Hayford's opinion is well-supported, because in
her April 1, 2011, medical report, Dr. Hayford observed pain to palpation
over Plaintiff's lower spine as well as a stiff gait and frequent shifting in his
chair, and because subsequent clinical findings from Dr. Hayford support
her opinion.  (Tr. 474-476.)  However, even if evidence in the record
supports Dr. Hayford's conclusion that Plaintiff is unemployable, remand
of this case would not be necessary, as the ALJ's decision is supported by
substantial evidence.  *See Ealy*, 594 F.3d at 512 ("If the Commissioner's
decision is based upon substantial evidence, we must affirm, even if
substantial evidence exists in the record supporting a different
conclusion.").  The Commissioner is not bound by a treating physician's
opinion; an opinion receives greater weight only if it is supported by
sufficient clinical findings and is consistent with other evidence.  *Combs v.
Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006).  Here, the ALJ
properly concluded that Dr. Hayford's opinion regarding Plaintiff's
limitations was not consistent with her treatment notes from that same day
which showed that Plaintiff's physical examination was unremarkable.

Moreover, even if the ALJ had not given "good reasons" for giving less than controlling weight to Dr. Hayford's opinion, the ALJ was not required to adopt Dr. Hayford's conclusion that Plaintiff is "unemployable."  (Tr. 476.)  Such a conclusion is not an opinion of a medical condition, but rather is an opinion of disability that is reserved for the ALJ.  It is well established that certain issues are reserved to the Commissioner for determination.  *See* 20 C.F.R. § 416.927(d).  Among these are whether a claimant is disabled.  *See* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Accordingly, Plaintiff's fourth assignment of error does not present a basis for remand.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 18, 2013

28